UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES G. REECE,<br><br>Plaintiff,<br><br>v.<br><br>AMRICK BASI, et al.,<br><br>Defendants. | No. 2:11-cv-2712 TLN AC P<br><br>ORDER AND FINDINGS &<br>RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court are the parties' fully briefed cross-motions for summary judgment. ECF Nos. 92, 94, 95, 107. Also before the court are defendants' requests for a ruling on the motions for summary judgment (ECF Nos. 118, 120) and motions to strike plaintiff's surreplies (ECF Nos. 114, 117).

I. Requests for Ruling on Motions for Summary Judgment

Defendants Villote and Lahey have filed a request for a ruling on their motion for summary judgment or alternatively that the court advise them as to the status of the motion. ECF No. 118. Defendant Basi has joined in their request. ECF No. 120. The requests will be granted to the extent these findings and recommendations provide a recommendation to the assigned district judge regarding the disposition of the parties' cross-motions for summary judgment.

Defendants are also reminded of the fact that the Eastern District of California maintains

1

one of the heaviest caseloads in the nation, a significant portion of which is comprised of pro se inmate cases such as this one. While the court understands defendants desire to have this matter resolved, these demands on the court often result in unavoidable delays in the resolution of individual matters.

II. <u>Motions to Strike</u>

Defendants move to strike plaintiff's unauthorized sur-replies to their motions for summary judgment on the grounds that they are not authorized and simply repeat arguments that plaintiff has already made. ECF Nos. 114, 117. Local Rules 230, which sets out the procedures for civil motions, contemplates a motion, a response, and a reply. There is no provision for a surreply and plaintiff has not requested leave to submit further briefing. Moreover, the court has reviewed plaintiff's surreplies and finds that they merely repeat arguments that plaintiff has already made. ECF Nos. 110, 115. Defendants' motions to strike will therefore be granted.

III. <u>Procedural History</u>

Plaintiff filed his original, verified complaint on October 12, 2011, in which he made allegations against defendants Lahey, Naku, Traquina, Villote, and Basi. ECF No. 1. After the court ordered service on defendants (ECF No. 8), defendants Lahey, Naku, Traquina, and Villote moved to dismiss the complaint on the grounds that (1) plaintiff could not state a claim for injunctive relief against Naku and Traquina; (2) the claim for damages against all defendants was time-barred; (3) plaintiff could not state an Eighth Amendment claim for damages against Naku and Traquina; and (4) plaintiff failed to state a claim for deliberate indifference as to defendants Lahey and Villote. ECF No. 19-1. Defendant Basi joined the motion. ECF No. 20. The motion to dismiss was granted on the grounds that plaintiff's claims for injunctive relief could proceed only pursuant to the procedures outlined in the <u>Plata</u> stipulation and were moot, and that plaintiff failed to state a claim against defendants Naku and Traquina. ECF No. 36.

Judgment was entered in error (ECF No. 37) and in re-opening the case, the undersigned stated that the case proceeded on plaintiff's Eighth Amendment claims of deliberate indifference against defendants Basi, Lahey, and Villote (ECF No. 39). Because the motion to dismiss had addressed only plaintiff's Eighth Amendment claims, the court made no mention of plaintiff's

Fourteenth Amendment claims in its order.

After discovery closed, briefing took place on the parties' cross-motions for summary judgment and plaintiff filed a "motion to correct error" (ECF No. 84). In response to plaintiff's motion, the court clarified for the record that the complaint states a Fourteenth Amendment claim against defendant Basi[1] for failing to inform plaintiff of the risks and side effects of Terazosin, thereby denying him his Fourteenth Amendment right to be provided the information necessary to make reasonably informed decisions about his healthcare. ECF No. 91. In reviewing the cross-motions for summary judgment, the court further discovered an error in the docketing. Id. While plaintiff's opposition to defendant Basi's motion for summary judgment was properly filed, his opposition to defendants Villote and Lahey's motion for summary judgment was inadvertently identified as a courtesy copy of the opposition to defendant Basi's motion. Id. As a result, plaintiff's opposition to Villote and Lahey's motion was never filed.

Given the confusion surrounding the scope of the claims against defendant Basi and the docketing error related to defendants Villote and Lahey's summary-judgment motion, the court vacated the then-pending motions for summary judgment, and the parties were given an opportunity to file new dispositive motions. Id. The parties proceeded to file renewed motions for summary judgment, and the fully briefed cross-motions are currently pending before the court.

IV.   Plaintiff's Allegations

In the complaint, plaintiff alleges that defendant Basi violated his Fourteenth Amendment rights when he failed to properly advise plaintiff of the risks and side effects of taking Terazosin, which resulted in plaintiff taking the Terazosin and becoming completely blind in his left eye. ECF No. 1 at 4. He further alleges that defendants Basi, Lahey, and Villote violated his Eighth Amendment rights on February 14-16, 2007, when they refused to either provide or refer him for immediate medical care for the loss of vision in his left eye, resulting in permanent, total vision loss in that eye. Id. at 4-5.

---

[1] Plaintiff also made Fourteenth Amendment claims against defendants Naku and Traquina, but because those claims are grounded in the same facts as the Eighth Amendment claims against them, the Fourteenth Amendment claims fail for the same reasons. See ECF No. 31.

V.   Motions for Summary Judgment

   A. Defendants' Arguments

      1. Defendant Basi

Defendant Basi contends that he provided plaintiff with the information necessary to make an informed decision about his medical care, and that it was not necessary to warn plaintiff of the risk of blindness because it is not a risk associated with Terazosin. ECF No. 94-1 at 18, 22-23. He also argues that he did not have any appointments with plaintiff during the onset of plaintiff's vision loss, that he did not deny plaintiff medical treatment, and that the treatment he did provide was appropriate and complied with the applicable standard of care. Id. at 17-20.

      2. Defendants Lahey and Villote

Defendants Lahey and Villote argue that they were not deliberately indifferent to plaintiff's medical needs, that plaintiff cannot establish that their actions caused his injury, and that they are alternatively entitled to qualified immunity. ECF No. 92-1 at 5-11. Defendant Lahey, relying on plaintiff's account of their interaction on February 15, 2007, argues that as a nurse it was not his job to treat the vision problem plaintiff described. Id. at 5-6. He further argues that his decision to have plaintiff fill out a health care request with a promise that he would rush it though, rather than referring plaintiff for immediate medical treatment, was appropriate since he witnessed two doctors decline plaintiff's request for immediate treatment. Id. Defendant Villote argues that plaintiff's claim that he should have been sent for immediate medical treatment is no more than a difference of opinion and that based on the situation presented, the referral to a doctor on a routine basis was appropriate. Id. at 6-7.

   B. Plaintiff's Arguments

It is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on other grounds, Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir. 2012) (en banc). However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are

4

subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id.

The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, though plaintiff has largely complied with the rules of procedure, the court will consider the record before it in its entirety. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

    C. Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

5

1  trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element
2  of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such
3  a circumstance, summary judgment should "be granted so long as whatever is before the district
4  court demonstrates that the standard for the entry of summary judgment, as set forth in Rule
5  56(c), is satisfied." Id.

6  If the moving party meets its initial responsibility, the burden then shifts to the opposing
7  party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.
8  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the
9  existence of this factual dispute, the opposing party may not rely upon the allegations or denials
10 of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
11 admissible discovery material, in support of its contention that the dispute exists. See Fed. R.
12 Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a
13 fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty
14 Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,
15 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a
16 reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

17 In the endeavor to establish the existence of a factual dispute, the opposing party need not
18 establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed
19 factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the
20 truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities
21 Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the
22 pleadings and to assess the proof in order to see whether there is a genuine need for trial."
23 Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

24 "In evaluating the evidence to determine whether there is a genuine issue of fact, [the
25 court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls
26 v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is
27 the opposing party's obligation to produce a factual predicate from which the inference may be
28 drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to

6

1  demonstrate a genuine issue, the opposing party "must do more than simply show that there is
2  some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations
3  omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the
4  non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391
5  U.S. at 289).

6  On November 18, 2015, defendants Lahey and Villote served plaintiff with notice of the
7  requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2]
8  ECF Nos. 92. See Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland,
9  154 F.3d 952, 960 (9th Cir. 1998) (movant may provide notice) (en banc).

10           D.   Legal Standards Governing Fourteenth Amendment Claims
11  The Ninth Circuit has held that the Fourteenth Amendment provides for the right to be
12  "free from unjustified intrusions into the body." Benson v. Terhune, 304 F.3d 874, 884 (9th Cir.
13  2002) (citing Riggins v. Nevada, 504 U.S. 127, 134 (1992)). That right includes the right "to
14  refuse unwanted medical treatment and to receive sufficient information to exercise these rights
15  intelligently." Id. (citing White v. Napoleon, 897 F.2d 103, 111 (3d Cir. 1990)); Rainwater v.
16  Alarcon, 268 F. App'x 531, 534 n.2 (9th Cir. 2008) (quoting Pabon v. Wright, 459 F.3d 241, 250
17  (2d Cir. 2006) ("[T]here exists a liberty interest in receiving such information as a reasonable
18  patient would require in order to make an informed decision as to whether to accept or reject
19  proposed medical treatment.")); see also White, 897 F.2d at 113 ("A prisoner's right to refuse
20  treatment is useless without knowledge of the proposed treatment. Prisoners have a right to such
21  information as is reasonably necessary to make an informed decision to accept or reject proposed
22  treatment, as well as a reasonable explanation of the viable alternative treatments that can be
23  made available in a prison setting.").

---

[2] Although defendant Basi failed to serve plaintiff with a Rand notice, his motion was served only twelve days after defendants Lahey and Villote served plaintiff with a Rand notice. Plaintiff was therefore provided with contemporaneous notification of the requirements and consequences of a summary judgment motion and his response to Basi's motion demonstrates his understanding of the requirements and the need to follow them. Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1159 (9th Cir. 2013) ("The Rand notice must issue so that the litigant will receive the motion and the notice reasonably contemporaneously.").

E.  Legal Standards Governing Eighth Amendment Claims

In order to state a §1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991); McKinney v. Anderson, 959 F.2d 853, 854 (9th Cir. 1992). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 5 (1992).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other grounds WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989)).

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very demanding standard for "deliberate indifference." "While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice." Wood, 900 F.2d at 1334. Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation. Farmer, 511 U.S. at 837 & n.5. It is not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Rather, deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." Id. (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a

1  prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner,
2  439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

3       A difference of opinion between an inmate and prison medical personnel—or between
4  medical professionals—regarding appropriate medical diagnosis and treatment are not enough to
5  establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989);
6  Toguchi, 391 F.3d at 1058. To establish a difference of opinion rises to the level of deliberate
7  indifference, plaintiff "must show that the course of treatment the doctors chose was medically
8  unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

9       F.   Undisputed Material Facts

10      At all times relevant to the complaint, plaintiff was an inmate in the custody of the
11 California Department of Corrections (CDCR) at California State Prison-Solano (CSP-Solano).[3]
12 At all times relevant to the complaint, defendants Basi, Lahey, and Villote were employed at
13 CSP-Solano. Defendant Basi was a doctor and defendants Lahey and Villote were registered
14 nurses.

15      Plaintiff submitted a health care services request form dated December 27, 2006, which
16 stated in relevant part that he had constant urination, was requesting a prostate test, had been told
17 previously that his prostate was enlarged, and that his urine stream had become weaker and he
18 had no control over the muscle controlling his urination. ECF No. 94-2, ¶ 3; ECF No. 108 at 122,
19 ¶ 3. Plaintiff was seen by defendant Basi on January 27, 2007, and defendant Basi diagnosed
20 plaintiff with benign prostatic hyperplasia (BPH). ECF No. 94-2, ¶ 4; ECF No. 108 at 122, ¶ 4.
21 Defendant Basi prescribed Terazosin, 1 mg at bedtime, for the BPH. ECF No. 94-2, ¶ 5; ECF No.
22 108 at 126, ¶ 5. Terazosin is the first line of treatment for BPH symptoms. The most common
23 side effects include dizziness upon standing, fatigue, headaches, and lightheadedness, with
24 blurred vision, due to the relaxation of the eye vessels and increased blood flow, being a less

25 ---

26 [3] Defendants Lahey and Villote's statement of undisputed facts states that plaintiff was housed at CSP-San Quentin. ECF No. 92-2 ¶ 1. However, the evidence they cite (ECF No. 49 at 2), along
27 with plaintiff's medical records and numerous other documents on the record, demonstrate that he was housed at CSP-Solano. Since plaintiff is currently housed at CSP-San Quentin, it appears
28 defendants mistakenly included his current location in their statement of undisputed facts.

1  common side effect.  Id.  At a minimum, defendant Basi advised plaintiff that a side effect of
2  Terazosin was lowered blood pressure.  Id.  Defendant Basi did not advise plaintiff that there was
3  a risk of developing central retinal vein occlusion (CRVO) or of the specifics of the various
4  surgeries or other procedures that could be performed should treatment with medication fail to be
5  effective.  ECF No. 94-2, ¶ 6; ECF No. 108 at 122, ¶ 6.

6  On February 10, 2007, plaintiff was seen by defendant Basi on a follow-up visit.  ECF No.
7  94-2, ¶ 7; ECF No. 108 at 123, ¶ 7.  At that time plaintiff did not report any side-effects from the
8  Terazosin.  Id.  Plaintiff did not have another appointment with defendant Basi until April 7,
9  2007.  ECF No. 94-2, ¶ 8; ECF No. 108 at 123, ¶ 8.

10 On February 14, 2007, plaintiff submitted a health care request stating that he woke up at
11 5:30 a.m. to find that he was totally blind in his left eye.  ECF No. 72-4 at 64.  He stayed in bed
12 until 6:30 a.m. when his vision began to return.  Id.

13 On February 15, 2007, plaintiff went to the yard clinic and encountered defendant Lahey.
14 ECF No. 92-2, ¶ 5; ECF No. 98 at ¶ 3.  Plaintiff described the vision problem he was having with
15 his left eye and Lahey told him to complete a health care request.  ECF No. 92-2, ¶¶ 5-6; ECF No.
16 98, ¶ 3.  Plaintiff stated that he had already completed a request the previous day and Lahey told
17 him to complete another one just to be sure and that he would get it to the triage nurse on an
18 expedited basis.  ECF No. 92-2, ¶ 6; ECF No. 98, ¶ 3.

19 On February 16, 2007, plaintiff was seen by defendant Villote on his February 14, 2007
20 health care request.  ECF No. 92-2, ¶ 9; ECF No. 98, ¶ 6.  Plaintiff explained to Villote that he
21 had lost vision in his eye for about an hour on February 14, 2007.  Id.  Villote referred him for an
22 appointment with a primary care physician within two weeks.  Id.  Defendant Villote was not
23 responsible for the actual scheduling of doctor's appointments.  ECF No. 92-2, ¶ 10; ECF No. 98,
24 ¶ 7.

25 On March 7, 2007, plaintiff was seen by Dr. Rohrer, who referred him to ophthalmology
26 on an urgent basis.  ECF No. 72-4 at 63, 88.  Plaintiff was seen by Dr. Ulanday in the
27 ophthalmology department on March 14, 2007, and he was referred for an outside consult on an
28 emergent basis.  Id. at 87.  Plaintiff was then transported to U.C. Davis where he was diagnosed

1  with CRVO in his left eye. Id. at 99-102. Plaintiff was to have a follow-up in one to two weeks,
2  wear protective glasses, avoid dangerous work, take one baby aspirin every day, and maximize
3  his blood pressure control. Id. at 99, 102. It was also recommended that plaintiff be checked for
4  diabetes mellitus, hypertension and cardiovascular disease. Id. The doctor noted that plaintiff
5  reported being on medication for BPH, but could not remember the name of the medication, and
6  that it was explained to plaintiff that some prostate medications can increase the chance of
7  NAION,[4] especially when taken at night, and that he should discontinue the medication for the
8  time being. Id. at 102. Plaintiff was sent back to U.C. Davis on March 22, 2007, where he
9  received the first of several injections to attempt to prevent further vision loss and stabilize his
10 vision. Id. at 98. Plaintiff later reported that the first injection recovered some of his vision, but
11 the subsequent injections had no effect. Id. at 139.

### G. Discussion

#### 1. Failure to Inform

It is undisputed that defendant Basi did not warn plaintiff that CVRO was a possible side effect of taking Terazosin. Nor did he advise plaintiff of the specifics of the various surgeries and other procedures that could be performed if medication was ineffective. However, these failures do not constitute a violation of plaintiff's Fourteenth Amendment right to sufficient information to make informed decisions about his health care.

Defendant Basi asserts that "central retinal vein occlusion like that suffered by [plaintiff] is not typically, if ever, associated with the medication Terazosin. While certain sexual performance medications such as Cialis and Viagra have been associated with blindness, medical literature does not support that [sic] Terazosin being similarly associated." ECF No. 94-3 at 8. Plaintiff argues that the Terazosin caused the CRVO in his left eye and he should have been warned about the risk of blindness from Terazosin. However, even if the Terazosin did in fact lead to plaintiff's blindness, he provides no competent evidence to establish that CRVO was a known risk such that defendant Basi should have warned him about its possibility. Although

---

[4] Nonarteritic anterior ischemic optic neuropathy. ECF No. 94-2, ¶ 15.

plaintiff claims the doctor at U.C. Davis told him the Terazosin caused his blood clot, this assertion is hearsay and the medical records state only that plaintiff was advised that "*some prostate meds can [increase] the chance of NAION, especially when taken @ night.*" ECF No. 72-4 at 102 (emphasis added). The notes do not specify which medications lead to an increased risk and specifically state that plaintiff did not recall the name of the medication he was taking. Id. Additionally, none of plaintiff's subsequent medical records indicate that CRVO was a known risk of Terazosin. ECF No. 94-3, ¶ 10 (Plaintiff's "subsequent treating rheumatologist and ophthalmologists had considered possible causes for the occlusion, including the medication for his BPH which had been recently started, but had not come to any determination of that cause, which is typical for this retinal vein condition."); see e.g. ECF No. 72-4 at 48, 49-54, 87, 96-102, 122, 125-26, 128-31, 133-45, 148, 151-60 (medical records from subsequent visit to ophthalmologists and rheumatologist, none identifying cause of CRVO).

      Plaintiff also points to informational documents regarding Terazosin (ECF No. 108 at 37-38), which were previously proffered by defendants in support of their motion to dismiss, in order to support his claim that defendant Basi did not properly inform him about the risks of Terazosin. The court previously declined to take judicial notice of these documents because they were not accompanied by appropriate "foundational declarations regarding the accuracy or comprehensiveness of the exhibits." ECF No. 31 at 14. The court declines to consider these documents now for the same reasons it declined to take judicial notice of them. The court also declines to consider plaintiff's typed document which purports to list side effects from "Mosby's 2007 Nursing Drug Reference." ECF No. 108 at 69. Moreover, even if the court did consider the documents offered by plaintiff, none of them identify CRVO or blindness as potential side effects. Plaintiff has failed to present evidence that could support a finding that CRVO and blindness were known risks when taking Terazosin. Defendant Basi's failure to warn him about these risks was therefore not a violation of plaintiff's Fourteenth Amendment rights.

      With respect to plaintiff's claim that defendant Basi should have more fully explained his surgery options, defendant Basi asserts that medication such as Terazosin is the first line of treatment for BPH, with surgery becoming a possibility when the medication is ineffective. ECF

1  No. 94-3, ¶¶ 22-23. Basi further declares that it would have been the urologist's responsibility to
2  discuss surgical options with plaintiff, if the medications failed and plaintiff was consequently
3  referred to the specialist. Id., ¶ 25. Plaintiff fails to offer any competent evidence to dispute
4  defendant Basi's testimony that it was the standard of care to treat BPH with medication first. He
5  also fails to offer evidence that Basi should have explained the details of the surgical options,
6  rather than just advising plaintiff that it may be necessary if medication was ineffective, or that
7  surgery should have been offered as a treatment option at that time. Given Basi's representation
8  of the standard of care and the undisputed facts that show that he adhered to it, the court cannot
9  find that defendant Basi deliberately acted to deprive plaintiff of his right to make informed
10  decisions about his medical care.

11  To the extent plaintiff now argues that Basi should have warned him of other side effects,
12  such as tinnitus, priapism, depression, and palpitations (ECF No. 108 at 13-14, 17), it is clear that
13  his real claim is that Basi should have warned him about the possibility of blindness. Plaintiff's
14  claim that he would have declined the medication had he known of the risk of these other
15  potential side effects is questionable. As the Second Circuit noted, "it is not unlikely that, after
16  receiving appropriate treatment that proved to have unpleasant side effects, a prisoner might
17  claim that he had not received sufficient information to allow him to decide whether to refuse that
18  treatment." Pabon, 459 F.3d at 250. Moreover, plaintiff has not provided admissible evidence
19  that establishes that these are potential side effects of Terazosin. Plaintiff relies solely on the
20  printouts previously cited by defendants in support of their motion to dismiss (ECF No. 108 at
21  37-68) and his typed list of side effects from Mosby's 2007 Nursing Drug Reference (id. at 69).
22  As already discussed, the court declines to consider these documents.

23  Moreover, plaintiff could not prevail on his Fourteenth Amendment claim even if the
24  court considered the documents on which plaintiff relies. Though the documents provide
25  information on reported side effects, they also indicate that the test groups were receiving daily
26  doses between 1 and 20 mg and 1 and 40 mg. There is no indication of the dosage at which side
27  effects began to manifest. See id. at 55, 57. Plaintiff was receiving a 1 mg dose daily. The
28  ////

documentation he provides is insufficient to establish that he faced a genuine risk of side effects at that low dosage.

Additionally, "'liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process.'" Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472 (2015) (emphasis in original) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)); Daniels v. Williams, 474 U.S. 327, 331 (1986) ("Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." (emphasis in original) (citations omitted)). Plaintiff cannot show that defendant Basi acted to deliberately deprive him of his right to refuse treatment. At a minimum, it is agreed that defendant Basi warned plaintiff that low blood pressure was the most common side effect, and took some effort to advise plaintiff about the treatment he was proposing. Absent some evidence that plaintiff was at risk for side effects at the dose he was receiving, and that the risk was statistically significant enough that a reasonable patient would want to know of it, plaintiff cannot show that Basi's failure to advise him of other side effects constituted a deliberate decision to deprive plaintiff of his right to make informed decisions about his medical care.

Plaintiff also attempts to establish that Basi deliberately deceived him, by claiming that Basi wanted to trick him into taking medication instead of getting surgery because it would save the CDCR money. ECF No. 108 at 14; ECF No. 95 at 12. This claim is wholly unsupported by anything other than baseless speculation.

Without competent evidence regarding the risk of additional side effects at the dose plaintiff was receiving, plaintiff cannot establish that Basi's failure to warn him of those side effects was more than negligent, and negligence is not sufficient to establish a due process violation. Accordingly, defendants are entitled to summary judgment on plaintiff's Fourteenth Amendment claim.

### 2. Deliberate Indifference

Plaintiff alleges that on February 14 and 15, 2007, defendant Basi was standing less than five feet away and listening in while plaintiff was explaining his vision loss to a nurse. ECF No. 95 at 2-3, 6; ECF No. 108 at 6. He further claims that on both days he requested medical

attention from defendant Basi, and Basi refused. Id. Defendant Basi states that he never overheard any conversations between plaintiff and other staff members regarding his vision on February 14 or 15, 2007, and that if he had learned of plaintiff's vision problems, he would have ordered a consultation with an ophthalmologist. ECF No. 94-3, ¶¶ 27-28. However, Basi also states that he has no specific recollection of working at CSP-Solano on either of those days. Id., ¶ 28. It is unclear how defendant can recall with specificity that he did not overhear a conversation on those days when he has no specific recollection of them. Regardless, a dispute of fact is created by plaintiff's claim that Basi refused him medical assistance and Basi's contrary claim that he did not. By Basi's own admission, had he known of plaintiff's vision issues, he would have immediately ordered an ophthalmology consultation. Id., ¶ 28. Taken in the light most favorable to plaintiff, these facts demonstrate that defendant Basi deliberately ignored plaintiff's possible medical need. However, as will be addressed below, this dispute of fact is ultimately not material because plaintiff is unable to demonstrate an essential element of deliberate indifference.

Plaintiff similarly argues that defendants Lahey and Villote failed to adequately respond to his reported vision loss. Plaintiff claims that he saw defendant Lahey on February 15, 2007, and after reporting that he had lost all vision in his left eye for approximately an hour, after which time most of his vision returned, he was told to fill out a health care request form which would be expedited. ECF No. 100 at 2-3; ECF No. 107 at 2. Defendant Lahey has no recollection of an encounter with plaintiff on February 15, 2007, but asserts that under the circumstances presented, there would have been no basis for him to further examine plaintiff. ECF No. 92-3, ¶ 5. He further argues that his failure to refer plaintiff for immediate evaluation by a physician was reasonable given plaintiff's allegations that Lahey witnessed two physicians declined to see plaintiff immediately. ECF No. 92-1 at 5-6. Given plaintiff's assertion that Lahey witnessed two physicians decline to see plaintiff immediately, the court cannot find – and no jury could find – that Lahey was deliberately indifferent to plaintiff's needs when he had plaintiff submit a health care request form instead of sending plaintiff for an immediate evaluation.

With respect to defendant Villote, plaintiff alleges that he saw Villote on February 16, 2007, in response to his February 14, 2007 health care request. ECF No. 100 at 3, ECF No. 107

1  at 2. He contends that Villote should have sent him for an immediate examination by a physician
2  rather than putting him down for a routine exam within two weeks. Id. Villote asserts that given
3  the condition with which plaintiff presented, an examination needed to be conducted by a
4  physician and her referral was appropriate. ECF No. 92-4, ¶ 3. She also asserts that based on her
5  assessment of plaintiff's condition on February 16, 2007, plaintiff did not require immediate
6  medical attention. Id., ¶ 5. In light of defendant Basi's assertion that had he been aware of
7  plaintiff's vision issues on February 14 or 15, 2007, he would have sent plaintiff for an immediate
8  ophthalmology consultation, it is questionable whether defendant Villote's assessment that
9  plaintiff did not require immediate medical attention was appropriate. However, a difference of
10 opinion between medical providers is not sufficient to establish deliberate indifference, Sanchez,
11 891 F.2d at 242; Toguchi, 391 F.3d at 1058, and plaintiff has not presented evidence that
12 Villote's actions were medically unacceptable, Jackson, 90 F.3d at 332

13       To the extent plaintiff argues that Villote failed to schedule him to be seen within two
14 weeks, causing even further delay, defendant Villote asserts that she was not responsible for the
15 actual scheduling, she simply submitted a list of appointments that needed to be scheduled. ECF
16 No. 92-4, ¶ 4. However, while Villote testifies to her practice at the time, she does not testify that
17 she did in fact submit a list with plaintiff's name to scheduling on February 16, 2007. Id. This is
18 ultimately immaterial, however, because even if defendant Villote's decision to schedule plaintiff
19 for a routine examination was wrong or she failed to submit his name to scheduling, as discussed
20 below, that delay does not violate plaintiff's Eighth Amendment rights unless he suffered harm
21 from the delay.

22       With respect to all three defendants, even if the court assumes that they should have either
23 provided or referred plaintiff for immediate medical care between February 14 and 16, 2007, and
24 that they deliberately ignored plaintiff's potential medical need, plaintiff cannot prevail on his
25 Eighth Amendment claims because harm is a necessary element of deliberate indifference. Jett,
26 439 F.3d at 1096 (deliberate indifference can be established "by showing (a) a purposeful act or
27 failure to respond to a prisoner's pain or possible medical need *and* (b) harm caused by the
28 indifference." (emphasis added)); Wood, 900 F.2d at 1335 (delay in treatment does not constitute

deliberate indifference unless it causes substantial harm); Shapely v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 407 (9th Cir. 1985) (finding denial of surgery was not deliberate indifference unless it was harmful).  Although plaintiff argues that had he received medical treatment anytime between February 14 and 16, 2007, his vision would have been saved, he does not offer any evidence that supports his position.  Plaintiff has not established that he is qualified to offer an opinion as to when his vision loss became irreparable or whether there was anything that could have been done had he been sent to an ophthalmologist sooner.  Defendant Basi has testified through his declaration that CRVO

> is a blockage that damages the blood vessels of the retina.  **There is no known effective medical treatment for either the prevention of or the treatment of central retinal vein occlusion.**  Medical care focuses on identifying and treating any systemic medical problems to reduce further complications.  Because the exact pathogeneses of the thrombotic occlusion of the central retinal vein is not known, the various medical modalities of treatment of the condition have had only varying success in preventing complications and preserving vision.

ECF No. 72-3, ¶ 27 (emphasis added).  Although plaintiff was sent for treatments that attempted to recover some of his vision, none of those reports indicate that earlier intervention would have made a difference.  The court also notes that while plaintiff was sent to the prison ophthalmologist on an urgent basis and to U.C. Davis on an emergency basis, it does not appear that either provided treatment for his vision loss beyond an exam and instructions to wear protective eyewear, discontinue Terazosin, maximize blood pressure control, and check for other conditions.  ECF No. 72-4 at 87-88, 99-102.  Plaintiff's medical records demonstrate that he did not receive any treatment until a week later when he was seen for a kenalog injection "to prevent further vision loss and stabilize the vision."  Id. at 98.  The failure to provide immediate treatment when plaintiff was initially seen indicates that immediate action was not necessary, and absent competent expert evidence, plaintiff cannot show that he was injured by the delay in being sent to the ophthalmologist.

Because plaintiff does not have evidence to show that the delays in his treatment led to his vision loss becoming permanent, he cannot establish that he suffered any harm due to defendants'

actions. Accordingly, defendants are entitled to summary judgement on plaintiff's Eighth Amendment.

### 3. Conclusion

For the reasons set forth above, defendants' motions for summary judgment should be granted and plaintiff's motions for summary judgment should be denied. Because the court finds no violation of plaintiff's Eighth Amendment rights, it need not address defendants Lahey and Villote's argument that they are entitled to qualified immunity.

### H. Summary

Defendant Basi's motion for summary judgment should be granted and plaintiff's motion for summary judgment against defendant Basi should be denied, because plaintiff does not have competent evidence to show that his vision loss was a known side effect of Terazosin that defendant Basi should have warned him about, that defendant Basi should have explained the details of potential surgery, or that the other potential side effects were a risk at the dosage he was receiving. He also has not provided competent evidence that shows that seeing an ophthalmologist sooner would have made a difference to his vision.

Defendants Lahey and Villote's motion for summary judgment should be granted and plaintiff's motion for summary judgment against them should be denied, because plaintiff cannot show that defendant Lahey's failure to send him directly to a doctor was deliberately indifferent when Lahey witnessed two doctors refuse to provide plaintiff with an immediate evaluation. He also cannot show that Villote's determination that his condition was not urgent was more than a difference of opinion. Finally, even if defendants Lahey and Villote did inappropriately delay plaintiff's medical treatment, plaintiff has not provided medical evidence showing that that seeing an ophthalmologist sooner would have made a difference to his vision.

### CONCLUSION

IT IS HEREBY ORDERED that:

1. Defendants' requests for a ruling on their motions for summary judgment (ECF Nos. 118, 120) are granted to the extent these findings and recommendations recommend a disposition on the motions to the assigned district judge;

2. Defendants' motions to strike plaintiff's surreplies (ECF Nos. 114, 117) are granted and the Clerk of the Court is directed to strike plaintiff's surreplies (ECF Nos. 110, 115) from the record.

IT IS FURTHER RECOMMENDED that:

1. Defendants' motions for summary judgment (ECF No. 92, 94) be granted;

2. Plaintiff's motions for summary judgment (ECF No. 95, 107) be denied; and

3. Judgment be entered for defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 3, 2016

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE